_____
_____

No. **10-2524**
Criminal
_____

IN THE
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
_____

**UNITED STATES OF AMERICA,**
Appellee

v.

**SAMUEL T. TURNER,**
Appellant.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION
_____

**BRIEF OF APPELLEE**
_____

**RICHARD G. CALLAHAN**
United States Attorney

**KEITH D. SORRELL**
Assistant United States Attorney
555 Independence, 3rd Floor, Cape Girardeau, MO 63703

Attorneys for Appellee

_____
_____

# POSITION ON ORAL ARGUMENT

The Government, appellee herein, does not believe that oral argument is necessary in this case since the issues raised can be addressed by review of the record and application of existing law; thus, conditioned upon the Court not granting oral argument to Turner, the Government waives oral argument. Should, however, the Court grant Turner's request for oral argument, the Government requests an equal amount of time to respond to such argument.

Appellate Case: 10-2524     Page: 2     Date Filed: 01/26/2011 Entry ID: 3749167

# TABLE OF CONTENTS

Page

Position on Oral Argument.............................................................................i

Table of Authorities.....................................................................................iv

Issues Presented for Review...........................................................................1

Statement of the Case....................................................................................3

Statement of the Facts...................................................................................4

Summary of the Argument...........................................................................18

Argument:

I.    The District Court Was Not Required to Question Turner Further
      Concerning His Competency at the Time That Turner Made His
      Request to Proceed *Pro Se* Because There Was No Evidence Before
      the District Court to Indicate That Turner Suffered From a Severe
      Mental Illness Preventing Him From Representing Himself............................20

II.   The District Court Was Not Required, *Sua Sponte*, to Order
      Turner to Undergo a Competency Examination During or
      After the Trial in the Absence of Evidence that Would Cause
      the District Court to Doubt Turner's Competence...............................................36

III.  The District Court Did Not Err in Determining That Turner
      Was Competent, Thereby Allowing Turner to Choose to
      Represent Himself in the Absence of Any Evidence That
      Turner Was Incompetent.  The District Court Was Not Required
      to Use the Higher Competency Standard Applicable to a
      Defendant to Choose to Represent Himself When the Defendant
      Suffers From a Severe Mental Illness..................................................................44

Conclusion...................................................................................................52

Appellate Case: 10-2524     Page: 3     Date Filed: 01/26/2011 Entry ID: 3749167

Certificate of Compliance..........................................................................52

Certificate of Service................................................................................53

iii

Appellate Case: 10-2524     Page: 4     Date Filed: 01/26/2011 Entry ID: 3749167

# TABLE OF AUTHORITIES

CASES                                                                                    PAGE

*Balfour v. Haws*, 892 F.2d 556 (7th Cir. 1989).................................................................25

*Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896 (1975)...................................22, 36, 49

*Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788 (1960)........................................22

*Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525 (1975)........................................22

*Godinez v. Moran*, 509 U.S. 389, 113 S.Ct. 2680 (1993)............................................21

*Griffin v. Lockhart*, 935 F.2d 926 (8th Cir. 1991)............................................................37

*Indiana v. Edwards*, 544 U.S. 164, 128 S.Ct. 2379 (2009)...................1, 2, 22, 27, 28

*Medina v. Singletary*, 59 F.3d 1095 (11th Cir. 1995)......................................................37

*Sheley v. Singletary*, 955 F.2d 1434 (11th Cir. 1992)...........................................37, 38

*United States v. Berry*, 565 F.3d 385 (7th Cir. 2009)...................................2, 45, 47-49

*United States v. Crawford*, 487 F.3d 1101 (8th Cir. 2007)................................2, 21, 43

*United States v. Day*, 949 F.2d 973 (8th Cir. 1991).............................2, 37, 38, 43, 45

*United States v. Denton,* 434 F.3d 1104 (8th Cir. 2006)...............................................25

*United States v. Ghane*, 593 F.3d 775 (8th Cir. 2010)...................................................25

*United States v. Kiderlen*, 569 F.3d 358 (8th Cir. 2009)..............................1, 20, 33, 34

*United States v. Ladoucer*, 573 F.3d 628 (8th Cir. 2009)............................................33

*United States v. Washington*, 596 F.3d 926 (8th Cir. 2010)......1, 20, 21, 30, 31, 36, 43

Appellate Case: 10-2524     Page: 5     Date Filed: 01/26/2011 Entry ID: 3749167

*United States v. Whittington*, 586 F.3d 613 (8th Cir. 2009)....................................21, 45

*Vogt v. United States*, 88 F.3d 587 (8th Cir. 1996)............................................1, 36, 37

*Weisberg v. Minnesota*, 29 F.3d 1271 (8th Cir. 1994), *cert. denied*,...........................36
  517 U.S. 1126, 115 S.Ct. 935 (1995)

## GUIDELINES

U.S.S.G. §4B1.4(b)(3)(B)..............................................................................15

## STATUTES

18 U.S.C. §922(g)(1)....................................................................................3, 6

18 U.S.C. §924(e)........................................................................................16, 44

28 U.S.C. §1654...........................................................................................22

Appellate Case: 10-2524     Page: 6     Date Filed: 01/26/2011 Entry ID: 3749167

No. **10-2524**
Criminal
_____
IN THE
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
_____

**UNITED STATES OF AMERICA,**
Appellee

v.

**SAMUEL T. TURNER,**
Appellant.

## ISSUES PRESENTED FOR REVIEW

**I.** **WHETHER THE DISTRICT COURT WAS REQUIRED TO QUESTION TURNER FURTHER CONCERNING HIS COMPETENCY AT THE TIME THAT TURNER MADE HIS REQUEST TO PROCEED *PRO SE* IN THAT THERE WAS NO EVIDENCE THAT TURNER SUFFERED FROM A SEVERE MENTAL ILLNESS PREVENTING HIM FROM REPRESENTING HIMSELF.**

*Indiana v. Edwards*, 544 U.S. 164, 128 S.Ct. 2379 (2009)
*United States v. Washington*, 596 F.3d 926 (8th Cir. 2010)
*United States v. Kiderlen*, 569 F.3d 358 (8th Cir. 2009)

**II.** **WHETHER THE DISTRICT COURT WAS REQUIRED, *SUA SPONTE,* TO ORDER TURNER TO UNDERGO A COMPETENCY EXAMINATION DURING OR AFTER THE TRIAL IN THE ABSENCE OF EVIDENCE THAT WOULD CAUSE THE DISTRICT COURT TO DOUBT TURNER'S COMPETENCE.**

*Vogt v. United States*, 88 F.3d 587 (8th Cir. 1996)

1

*United States v. Day*, 949 F.2d 973 (8ᵗʰ Cir. 1991)
*United States v. Crawford*, 487 F.3d 1101 (8ᵗʰ Cir. 2007)

**III. WHETHER THE DISTRICT COURT'S DETERMINATION THAT TURNER WAS COMPETENT WAS SUFFICIENT TO PERMIT TURNER TO REPRESENT HIMSELF IN THE ABSENCE OF ANY EVIDENCE BEFORE THE DISTRICT COURT THAT TURNER WAS INCOMPETENT, OR WHETHER THE DISTRICT COURT WAS REQUIRED TO USE THE HIGHER COMPETENCY STANDARD APPLICABLE TO A DEFENDANT WHO SUFFERED FROM A SEVERE MENTAL ILLNESS.**

*Indiana v. Edwards*, 544 U.S. 164, 128 S.Ct. 2379 (2009)
*United States v. Berry*, 565 F.3d 385 (7ᵗʰ Cir. 2009)

2

## STATEMENT OF THE CASE

On December 10, 2009, Samuel T. Turner was charged in an indictment with the offense of Felon in Possession of a Firearm in violation of 18 U.S.C. §922(g)(1). Turner was arrested on that charge and made his initial appearance on December 18, 2009. Turner pled not guilty to the charge at his arraignment on December 22, 2009.

On April 2, 2010, Turner appeared before United Stated District Court Judge Stephen N. Limbaugh, Jr., and requested that he be allowed to represent himself. That request was granted by the District Court. On April 5, 2010, the case was tried and submitted to a jury. Turner was convicted of the sole count in the Indictment.

On July 2, 2010, Judge Limbaugh conducted a sentencing hearing. At the conclusion of that hearing, Turner was sentenced to a below-Guidelines term of imprisonment of 180 months. Turner was also ordered to serve a period of supervised release of three years and to pay a $100.00 special assessment.

On July 6, 2010, Turner filed a Notice of Appeal. This Court has jurisdiction under its general appellate jurisdiction conferred by 28 U.S.C. §1291.

Appellate Case: 10-2524     Page: 9     Date Filed: 01/26/2011 Entry ID: 3749167

## STATEMENT OF FACTS

On July 22, 2009, ATF Special Agent Ryan Becker obtained two federal search warrants to search two locations in Kennett, located in Dunlin County, Missouri. The first location was the private residence of Samuel T. Turner at 805 East 3rd Street. The second location searched was Storage Unit # 36, at 707 Independence Street at a business known as McClain Mini Storage. Unit 36 was a temporary storage unit rented by Turner. (Trial Tr. pp. 59 - 63, Exh. 9, 10)

Several state and federal law enforcement officers went to Turner's home. They knocked on the front door and were met by Turner. Agent Becker gave Turner a copy of the search warrants and gave him a Miranda warning. Turner agreed to speak with the officers. The home was searched, but nothing of evidentiary value was found. While some officers were searching the home, other officers went to Storage Unit # 36. Turner provided a key to the storage unit so the officers could open the unit. During the search of the storage unit the officers found and seized a variety of ammunition, including shotgun, .30-30 and .22 caliber rounds. Turner agreed to talk further with the officers at the police station. Officers transported him to the Kennett police station for an interview. (Trial Tr. pp. 63 - 70, 125,126)

Turner initially denied that the ammunition found in the storage unit was his. After a short time, Turner admitted that he obtained the ammunition from his brother-

Appellate Case: 10-2524    Page: 10    Date Filed: 01/26/2011 Entry ID: 3749167

in-law. Turner told the officers that he had also stored a handgun in a red shoe in the storage unit. The officers asked for Turner's consent to search Storage Unit # 36 again. Turner agreed to that search, and signed a consent to search form. The officers and Turner returned to the storage unit. Turner walked into the unit and pointed out the pair of red shoes containing the handgun. An officer picked up the pair of shoes and discovered, in one shoe, an RG Industries, .22 caliber revolver and a box of .22 caliber ammunition. (Trial Tr. pp. 70 - 86)

The officers then spoke again with Turner. Turner said that he had obtained the handgun from the same brother-in-law and that he had the firearm because the police might take a long time to get to his house in an emergency. The officers obtained a DNA buccal swab with Turner's consent. Becker asked if the handgun was loaded. Turner stated that it was, and that he had fired it one time during the previous week. Becker opened the cylinder of the revolver and noted that the handgun contained five live rounds of ammunition and one spent round. Turner said that he fired the handgun once a week or so to make sure that it still worked. (Trial Tr. pp. 75, 76, 81, 86, 87)

At the time of the search, Turner was a previously convicted felon, having been convicted of the felonies of Second Degree Robbery and Second Degree Assault. ATF Special Agent Kevin Martin examined the handgun and determined that it was

5

manufactured in the State of Florida. Martin also gave his opinion that the firearm affected interstate commerce prior to the discovery of the handgun in Missouri. Trial Tr. pp. 91 - 95, 148 - 153, Exh. 34, 36, 37)

The handgun was examined by Missouri Highway Patrol Laboratory Chemist Shaminie Athinarayanan. She determined that the handgun had combined DNA on it; that is, the DNA on the handgun was contributed by at least two people. Several of Turner's DNA markers were found on the handgun DNA. Athinarayanan opined that Turner could not be excluded as a person who touched the revolver. Trial Tr. pp. 154 - 171)

On December 10, 2009, Turner was indicted by a grand jury in the Eastern District of Missouri in the Southeastern Division. The Indictment charged that Turner had committed the offense of Felon in Possession of a Firearm in violation of 18 U.S.C. §922(g)(1). Turner was arrested, and pled not guilty at his arraignment on December 22, 2009. The Federal Public Defenders Office was appointed to represent Turner. On January 15, 2010, Turner appeared with his attorney and waived his right to file pretrial motions.

After waiving his right to file pretrial motions, Turner then filed three *pro se* motions. On February 18, 2010, Turner filed a Motion to Dismiss, asserting that his right to testify and be represented before the grand jury was violated. (Appendix,

6

Exh. 1)  On March 2, 2010, Turner also filed a Motion to Grant Relief From Waiver and a Motion to Suppress Evidence.  (Appendix, Exh. 2, 3) These motions were denied.  The case was set for a jury trial on April 5, 2010.

On April 2, 2010 Turner appeared before Judge Limbaugh and requested that he be allowed to represent himself during the trial.   One of the first issues of District Court inquiry was the mental state of the defendant:

Court:          Do you have any question - - any reason to question the

defendant's mental capacity to proceed?

Skrien (Defense Counsel):          Your Honor, there is some history as to

diagnoses of mental illness on Mr. Turner's part.  However,

it's my belief in having conversations with him that he

understands.  You know, when we talk about his case he

asks relevant questions, has relevant concerns.  Obviously,

I would prefer that he retain me, I be allowed to continue to

represent him.  I think that is just generally in a defendant's

best interest.

Court:          So I take it you do not have any reason to question his

competency?

Skrien:          No, sir.  (April 2, 2010 Tr. pp. 2, 3)

7

The District Court and Turner then discussed his request to proceed without counsel:

Court:        All right. Well, Mr. Turner, why is it that you want to represent yourself instead of having the benefit of excellent counsel?

Turner:       I feel like I can defend myself.

Court:        I'm sorry.

Turner:       I feel like I'm able to best defend myself.

Court:        Okay. Well, I strongly disagree with you on that because you don't know the rules of procedure and I have to - - you have to understand that you will be bound by the rules of evidence and you'll be bound by the rules of procedure and you don't know those rules.

                  Do you understand what I'm saying?

Turner:       Yes, Your Honor, I understand. (April 2, 2010 Tr. pp. 3,4)

The District Court and Turner then discussed whether Turner had any complaints with his current counsel:

Court:        All right. Now you understand that you have this right to counsel?

Appellate Case: 10-2524   Page: 14   Date Filed: 01/26/2011 Entry ID: 3749167

Turner:     Yes, Your Honor.

Court:      And do you have any specific complaints about the way

            Mr. Skrien has represented you?

Turner:     Mr. Skrien doesn't feel that I have good defense.

Court:      Well, that doesn't necessarily mean that he's not

            representing you in a competent and professional manner.

Turner:     If he doesn't feel I have a defense and he's my defense

            attorney, I don't have a defense.

Court:      Well, you're entitled to a trial and he is bound to represent

            you in this case and he will represent you in this case and

            he will defend you in this case.

Turner:     I understand, Your Honor.  I'm still persuaded to proceed

            pro se.  (April 2, 2010 Tr. pp. 5, 6)

The District Court inquired as to whether Turner's counsel was prepared for

the trial of this case:

Court:      Well, Mr. Turner, it does appear that you are making an

            informed decision, you know you have this right to counsel.

            Mr. Skrien has investigated the case and is prepared to go

            to trial.

9

|         |                                                                          |
|---------|--------------------------------------------------------------------------|
|         | Is that right, Mr. Skrien?                                                |
| Skrien: | Yes, Your Honor.                                                          |
| Court:  | And he will present whatever defenses are available to you. Correct?      |
| Skrien: | Yes, sir, Your Honor.                                                     |
| Court:  | And he does, unlike you, understand the rules of evidence and the rules of procedure so I strongly encourage you to use Mr. Skrien as your counsel in this case but I know I can't force you to do that. |
| Turner: | Yes, Your Honor.  Mr. Skrien doesn't feel I have a defense.               |
| Court:  | Well, you have a defense in the sense that you are entitled to a jury trial and that the jury must be convinced beyond a reasonable doubt that you are guilty.<br>And so his defense is that he will hold the government to the proof; correct, Mr. Skrien? |
| Skrien: | Yes, sir, Your Honor.                                                     |
| Court:  | You understand what I'm saying?                                           |
| Turner: | Yes, Your Honor.  (April 2, 2010 Tr. pp. 6, 7)                            |

10

The District Court then made its findings that Turner was competent and that he could represent himself. The District Court made one last appeal to Turner for him to allow his attorney to represent him:

Court:      Finding that you are competent, this is an informed decision
            that you are making, I'll order Mr. Skrien to turn over your
            complete file to Mr. Turner with all of your investigation and
            any notes that you have and any preparation that you have
            but and then the jury instructions you'll need to give directly
            to Mr. Turner.

            . . .

Court:      Just one more time, Mr. Turner. You will be at the distinct
            disadvantage for the reasons that I've stated and are you sure
            that you want to represent yourself in this trial?

Turner:     Yes, I am, Your Honor. (April 2, 2010 Tr. p. 7)

No other materials were presented to the District Court regarding Turner's mental capacity, including any prior mental health examinations or conclusions.

On April 5, 2010, the case was tried to a jury in the Eastern District of Missouri, Southeastern Division. Before the jury was called, Judge Limbaugh gave Turner some instructions on trial procedure, such as when and where to stand and

Appellate Case: 10-2524    Page: 17    Date Filed: 01/26/2011 Entry ID: 3749167

which microphone to use. Judge Limbaugh inquired if Turner had received his complete case file from his defense attorney as well as a copy of the Government's proposed jury instructions. Turner agreed that his attorney had provided those materials to him. Judge Limbaugh commented that Turner had some experience with the criminal justice system and that this was a fairly straightforward case. Judge Limbaugh remarked that Turner was a college graduate; Turner corrected the District Court, reminding Judge Limbaugh that he was only a high school graduate. Turner requested that the rule on witnesses be imposed. The Government agreed to sequester its witnesses outside the courtroom, except for its case agent, and to instruct its witnesses not to discuss the testimony of any witness. (Trial Tr. pp. 3 - 7)

Turner conducted his voir dire examination after the Government completed its questions of the jurors. (Trial Tr. pp. 35 - 39) Turner asked as to whether the jurors believed that Jesus forgives sins. He asked whether the jurors sins were forgiven. The Government objected to that question and the objection was sustained. (Trial Tr. p. 36) Turner asked whether Matthew was a saint. An objection to that question was sustained. (Trial Tr. p. 36) Turner asked whether the jurors had made a mistake in their lives and whether they believed in salvation. (Trial Tr. p. 37) Turner asked whether a soul can overcome death and whether the jurors' lives were in God's hands. Objections to those two questions were sustained. (Trial Tr. p. 37)

Appellate Case: 10-2524    Page: 18    Date Filed: 01/26/2011 Entry ID: 3749167

Turner asked if a man can change his mind and if the jurors believed that a man is permitted to change his mind if he made a mistake. (Trial Tr. p. 37, 38) He asked whether the blood of Jesus washes away sins. An objection to that question was sustained. (Trial Tr. p. 38) Turner inquired if God's forgiveness was complete. Turner followed that question up with a request that all jurors who didn't raise their hands in response to his previous question raise their hands so he could take note of who they were. Jurors 4, 8, 9, 14, 15 and 32 raised their hands. (Trial Tr. pp. 38, 39) Turner asked what the jurors would do if God "does not wait for another year" and whether any of the jurors had been saved. Objections to those questions were sustained. (Trial Tr. p 39)

Turner requested that Juror 4 be struck for cause, citing "a lack of moral obligation." That request was denied. (Trial Tr. pp. 40, 41) After the Government struck six jurors, Turner struck Jurors 8, 9, 15 and 21 as his preemptive strikes. (Trial Tr. pp. 42, 43)

Evidence was presented by the Government. The Government's first witness was Agent Becker. Turner cross-examined Becker as to his recollection of the discovery of the firearm, especially as to its location and whether Turner was close to the weapon when he pointed it out to the officers. Turner questioned Becker about the address on one of Turner's conviction documents. Turner asked whether he had

13

telephone contact with Agent Becker in regards to a drug investigation and whether Turner was assisting in that investigation. When Becker did not recall a particular telephone call, Turner asserted that the record of that call could be obtained from the local drug task force telephone records. (Trial Tr. pp. 97 - 111)

The Government called Caruthersville Police Officer Michael Coleman as its next witness. Turner did not ask any questions of Coleman. The Government called Kennett Police Officer Craig Crow. When its examination was concluded, Turner asked on cross-examination whether Crow had heard Agent Becker offer any benefits to Turner for cooperating by revealing drug information. Crow denied hearing any such offer. (Trial Tr. pp. 136, 144) Caruthersville Police Officer Marcus Hopkins was the next Government witness. Turner cross-examined Hopkins as to whether Turner had been a jail trusty, whether he performed odd jobs around the jail during his incarceration, whether Turner served a full term for his sentence and whether Turner made any attempts to escape. Hopkins answered in the affirmative for each question except the last one. (Trial Tr. pp. 147, 148) Shamanie Athinarayanan testified as the Government's DNA expert. Turner asked her whether it was possible to determine how many people touched the firearm in this case. She testified that at least two persons had touched the firearm.

14

At the conclusion of the Government's case, Turner elected not to testify and not to present any evidence. Turner told the District Court that his decision not to testify was against the advice of his previous attorney and that this choice was Turner's decision. (Trial Tr. pp. 172, 173) The jury was instructed and each party presented closing arguments. During his closing argument, Turner asked which of the jurors were without sin and stated that "he that have no sinful transgression let him judge first." Turner told the jury that he was accused and convicted before "this Court" but innocent, without guilt or shame, before Jesus Christ. Turner concluded by thanking the District Court. (Trial Tr. pp. 194) The jury deliberated and returned a verdict finding Turner guilty of one count of being a Felon in Possession of a Firearm. The District Court set a sentencing hearing for July 2, 2010.

United States Probation Officer Paul H. Boyd prepared a Presentence Investigation Report (P.S.R.). That report recommended that the base offense level be set at 33 pursuant to U.S.S.G. §4B1.4(b)(3)(B). This offense level was required because Turner was an Armed Career Criminal due to his three prior felony convictions for violent felonies. Those prior violent felonies included two separate convictions for Second Degree Assault and one conviction for Second Degree Robbery. (P.S.R. ¶ 22)

Appellate Case: 10-2524    Page: 21    Date Filed: 01/26/2011 Entry ID: 3749167

The P.S.R. disclosed that Turner had seven additional previous felony convictions, including: Stealing (1991), Forgery (1991), Criminal Recklessness (1992), Unlawful Use of a Weapon (1994), Second Degree Assault and Second Degree Robbery (2002), and Second Degree Assault (2007). Turner accumulated a total of eight criminal history points for his last three felony convictions, resulting in a criminal history category of IV. The other convictions did not count for criminal history points due to their age. Turner's Guidelines range of imprisonment was calculated to be 188 to 235 months, based on his total offense level of 33 and a criminal history category of IV. Turner was subject to a mandatory minimum sentence of 180 months pursuant to 18 U.S.C. § 924(e) due to his previous convictions for three violent felony offenses. (P.S.R. ¶¶ 26 - 61, 84, 85)

On July 2, 2010, Judge Limbaugh conducted a sentencing hearing. Turner again appeared *pro se*. Neither Turner nor the Government objected to the factual statements contained in the P.S.R. or its application of the facts to the Guidelines. The District Court accepted the statements and calculations contained in the P.S.R. and found Turner's total offense level to be 33 and his criminal history category to be IV, resulting in a Guidelines range term of imprisonment of 188 to 235 months. After allocution, the District Court decided to vary downward to the statutory minimum term of imprisonment and imposed a sentence of imprisonment of 180

16

months.  In its Statement of Reasons, the District Court described the circumstances that led it to grant a downward variance to Turner.  Those reasons included the nature of the defendant's criminal history and the impact of his criminal history on the mandatory minimum sentence required by statute, as well as the determination that the sentence imposed was sufficient but not more than necessary to achieve the sentencing objectives.  (Sent. Tr. 198 - 205; Statement of Reasons, p. 3)

On July 6, 2010, Turner timely filed a Notice of Appeal.

Appellate Case: 10-2524    Page: 23    Date Filed: 01/26/2011 Entry ID: 3749167

## SUMMARY OF THE ARGUMENT

Turner voluntarily, knowingly and intelligently waived his right to be represented by counsel. The District Court advised Turner of the dangers and disadvantages of self-representation. The entire record reflects that Turner knew and understood those dangers and disadvantages. The District Court properly determined that Turner was competent and relied on Turner's attorney's representations that Turner was competent. There was no evidence before the District Court that Turner suffered from a severe mental illness that would prevent him from representing himself.

As there was no evidence to cause the District Court to doubt Turner's competency, the District Court was not required to order Turner to undergo a mental health examination. Turner did not exhibit irrational behavior; in fact, the entire record demonstrates his ability to validly choose to represent himself. Turner conducted his voir dire examination in such a way as to obtain a jury who might sympathize with his position and conducted his cross examination of the Government's witnesses to try to discredit them or portray himself in a good light. In the absence of evidence to the contrary, the District Court properly concluded that Turner was fully competent to make the choice to represent himself.

18

The District Court determined that Turner was competent, obviating the need for consideration of the higher standard required for making that choice for a defendant who suffers from a severe mental illness. Because Turner did not exhibit symptoms of a severe mental illness, there was no need for the District Court to employ the higher standard required for such defendants.

Appellate Case: 10-2524     Page: 25     Date Filed: 01/26/2011 Entry ID: 3749167

# ARGUMENT

## I. THE DISTRICT COURT WAS NOT REQUIRED TO QUESTION TURNER FURTHER CONCERNING HIS COMPETENCY AT THE TIME THAT TURNER MADE HIS REQUEST TO PROCEED *PRO SE* BECAUSE THERE WAS NO EVIDENCE BEFORE THE DISTRICT COURT TO INDICATE THAT TURNER SUFFERED FROM A SEVERE MENTAL ILLNESS PREVENTING HIM FROM REPRESENTING HIMSELF.

### Standard of Review

This Court reviews de novo the district court's decision to allow a defendant to proceed *pro se*. *United States v. Washington*, 596 F.3d 926, 935 (8th Cir. 2010); *United States v. Kiderlen*, 569 F.3d 358, 364 (8th Cir. 2009). The Sixth Amendment provides a criminal defendant with the right to counsel and the corresponding right to waive the right to counsel and proceed *pro se*. *Washington*, 596 F.3d at 935. If the defendant waives the right to counsel, the waiver must be voluntary, intelligent, and knowing. *Id*. This standard is met if the trial court specifically informed the defendant of the dangers and disadvantages of self-representation, or if the entire record evidences the defendant knew and understood the disadvantages. *Id*. An on-the-record colloquy exploring the dangers of self-representation is recognized as the preferred method of substantiating a waiver's validity. *Id*.

Before allowing a defendant to waive his right to counsel, a trial court must be satisfied that the defendant is competent to do so. *Washington*, 596 F.3d at 940,

20

citing *United States v. Crawford*, 487 F.3d 1101, 1105 (8th Cir. 2007), citing *Godinez v. Moran*, 509 U.S. 389, 400, 113 S.Ct. 2680 (1993). The determination of whether a defendant is competent to stand trial is within the discretion of the district court. Competency is a factual finding which this Court affirms unless clearly arbitrary or unwarranted, or clearly erroneous. *United States v. Whittington*, 586 F.3d 613, 617 (8th Cir. 2009).

Generally, a trial court need not *sua sponte* order an evaluation to determine a defendant's competence to waive counsel; "as in any criminal case, a competency determination is necessary only when a court has reason to doubt the defendant's competence." *Washington*, 596 F.3d at 940. Unless evidence raises sufficient doubt about a defendant's competence, further inquiry is not required. Whether a competency evaluation is warranted is a determination within the discretion of the district court. *Id*.

## The Merits

Turner contends that the District Court "failed to meet its obligations" to Turner by "failing to make an assessment of Turner's ability to understand or his actual understanding of what he was doing when he gave up that [right to counsel]". (Turner's brief, pp. 16, 18) Turner asserts that the District Court did not make the necessary inquiries so that the record would establish that Turner was capable of

21

knowing what he was doing when he waived counsel and that his choice was made with "eyes open". (Turner's brief, p. 18) Turner's contention is without merit and is not supported by the record.

When a defendant who has a mental illness requests permission to represent himself, the district court must weigh competing Constitutional issues. On one hand, a defendant may not be prosecuted if he is determined to be incompetent. Due process prevents the trial of a defendant who lacks mental competency. *Drope v. Missouri*, 420 U.S. 162, 171-72, 95 S.Ct. 896 (1975); *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788 (1960). Competency to stand trial requires the ability to understand the nature of the proceedings, to consult with counsel, and to assist counsel in preparing a defense. *Drope*, 420 U.S. at 171; *Dusky*, 362 U.S. at 402.

On the other hand, the Sixth Amendment guarantees a criminal defendant the fundamental right to represent himself. *Faretta v. California*, 422 U.S. 806, 807, 95 S.Ct. 2525 (1975); 28 U.S.C. § 1654. The right to self-representation is not absolute, however. *Indiana v. Edwards*, 544 U.S. 164, 171, 128 S.Ct. 2379, 2384 (2009). A defendant may not represent himself if the district court determines that, while competent enough to stand trial, the defendant still suffers from a severe mental illness to the point where he is not competent to conduct trial proceedings by himself. *Edwards*, 554 U.S. at 178. That analysis leaves a broad area of defendants who may

22

suffer from some form of mental illness that is not so severe as to neither prevent their prosecution nor to deny them their right to self-representation. *Edwards* refers to such accused as "gray area" defendants. *Edwards*, 554 U.S. at 173.

Turner has not claimed that he was incompetent to the point that he was unable to stand trial, nor does he claim to suffer from severe mental illness. His brief only asserts that he was sufficiently incompetent that he should not have been allowed to make the choice to represent himself. (Turner's brief, pp. 15, 16, stating that ". . . the district judge should have taken a realistic account of Turner's mental incapacity and recognized that he was incompetent to conduct his trial without representation.") The entire record demonstrates that the District Court did not abuse its discretion in either making its assessment that Turner was competent or in failing to conduct a further inquiry as to Turner's mental capacity.

**The District Court Properly Made an Assessment that Turner Was Competent After Defense Counsel Vouched For His Competency.**

Turner first contends that the District Court failed to properly make an assessment of his mental capacity. (Turner's brief, p. 18) This issue became academic after defense counsel assured the District Court of Turner's competency:

Skrien:    Your Honor, there is some history as to diagnoses of mental

illnesses on Mr. Turner's part. However, its my belief in having

conversations with him that he understands. You know, when we

23

talk about his case he asks relevant questions, has relevant concerns. Obviously, I would prefer that he retain me, I be allowed to continue to represent him. I think that is just generally in a defendant's best interest.

Court: So I take it you do not have any reason to question his competency?

Skrien: No, sir. (April 2, 2010 Tr. pp. 2, 3)

After speaking with attorneys for both Turner and the Government, and speaking directly with Turner, the District Court stated:

Court: Finding that you are competent, this is an informed decision that you are making, I'll order Mr. Skrien to turn over your entire file to Mr. Turner with all of your investigation and any notes that you have and any preparation that you have but and then the jury instructions you'll need to give directly to Mr. Turner. (April 2, 2010 Tr. p. 7)

Turner's contention that the District Court failed to make a factual determination that Turner was both competent and made a knowing decision to waive his right to counsel is completely rebutted by the record. This Court has recognized the importance of defense counsel's appraisal of a defendant's competency to assist

24

in his own defense. "Trial counsel's opinion should receive significant weight since '[c]ounsel, perhaps more than any other party or the court, is in a position to evaluate a defendant's ability to understand the proceedings.'" *United States v. Denton,* 434 F.3d 1104, 1112 (8th Cir. 2006) (quoting *Balfour v. Haws*, 892 F.2d 556, 561 (7th Cir. 1989). In *United States v. Ghane*, 593 F.3d 775 (8th Cir. 2010), this Court reversed a district court's determination that the defendant was incompetent to proceed. This Court based it's findings, in part, on the district court's failure to consider defense counsel's opinion that Ghane was competent. "We believe that it was incumbent on the district court to have considered Dr. Ghane's attorney's opinion about Ghance's competence, particularly in light of the district court's conclusion that it was only Dr. Ghane's inability to assist in his defense - a subject about which his attorney would have valuable insight - that made him incompetent." *Ghane*, 592 F.3d at 784. Having assured the District Court of Turner's competency, defense counsel cannot now impugn the District Court's decision to follow counsel's own advice.

**The District Court Was Not Presented With any Evidence That Turner Suffered From a Severe Mental Illness.**

Turner also argues that the District Court was required to conduct a further investigation into Turner's mental health issues, based on evidence either presented to the court or available to the court. The record demonstrates that there was no

25

evidence presented to the District Court that would alert Judge Limbaugh to any severe mental illness suffered by Turner.

Turner points to two items that should have alerted the District Court to a particular mental health condition suffered by Turner: a passage from Turner's Pretrial Services Report detailing the results of a mental health examination that was conducted in 2006 regarding a state prosecution; and a brief statement by defense counsel at the April 2, 2010, hearing. As reported in Turner's brief, the Pretrial Services Report alleges that Turner was diagnosed as a paranoid schizophrenic in 2006. (Turner's brief, p. 19) The Pretrial Services Report was made available to the attorneys for Turner and the Government. However, defense counsel did not refer to the report when he informed the District Court obliquely on April 2, 2010, that there was "some history as to diagnoses of mental illness on Mr. Turner's part." (April 2, 2010 Tr. p. 2)

As to Turner's current condition, any urgency the District Court may have imputed to this information was instantly blunted by counsel's repeated assurances that Turner "understands" and "asks relevant questions, has relevant concerns." Counsel then rendered the information nugatory by this exchange:

Court:      So I take it you do not have any reason to question his

            competency.

26

Skrien:       No, sir.  (April 2, 2010 Tr. p. 3)

Turner contends that his attorney's response that Turner had some history of mental illness was sufficient to require that the District Court engage in a further inquiry as to Turner's competency.  (Turner's brief, p. 19)   But the record is clear that Turner's attorney did not question Turner's competency in any respect.  He stated that Turner asked relevant questions and had relevant concerns.  Turner's attorney concluded that there was no reason for him to question Turner's competency.  Turner's attorney did not qualify or limit his response as to Turner's competency in any way.  He simply concluded that Turner was competent.  There was absolutely no evidence before the District Court that would indicate that Turner was suffering from any mental health issue that would prevent Turner from representing himself or making a valid choice to do so.

**A Defendant Has the Sixth Amendment Right to Waive Counsel Unless He Suffers From a Severe Mental Illness.**

The Supreme Court discussed the right of a person afflicted with schizophrenia to represent himself in *Indiana v. Edwards*, 554 U.S. 164, 128 S.Ct. 2379 (2008).  There, the defendant requested that he be allowed to represent himself at a second criminal trial.  His first trial resulted in a guilty verdict on two charges, but the jury failed to reach a verdict on the two remaining charges.  Prior to the retrial, Edwards asked the court to permit him to represent himself.  The trial judge noted that Edwards

27

suffered from schizophrenia and concluded that Edwards was competent to stand trial but not competent to represent himself. The trial judge then denied Edwards' request to represent himself. Edwards was represented by appointed counsel at his trial and was convicted of both remaining counts. He appealed his conviction, arguing that the trial court deprived him of his constitutional right of self representation. The Indiana appeals court agreed with Edwards and ordered a new trial. The Indiana Supreme Court affirmed the decision of the appellate court. The case was then transferred to the Supreme Court. *Edwards*, 554 U.S. at 168.

The Supreme Court vacated the decision of the Indiana Supreme Court, holding that:

> We consequently conclude that the Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so. That is to say, the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial . . . but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves. *Edwards*, 554 U.S. at 177-78.

After *Edwards*, it is clear that a defendant who suffers from a severe mental illness does not have an absolute right to represent himself. The decision as to whether a defendant has a severe mental illness sufficient to prevent him from exercising his constitutional right to represent himself should be left to the trial judge

28

in the case, who would be "best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant." *Edwards*, 554 U.S. at 177.

On April 2, 2010, Turner appeared before Judge Limbaugh for a pretrial conference. During that hearing Turner made his request to represent himself. At the conclusion of that hearing, Judge Limbaugh granted Turner's request and allowed him to represent himself.

The lengthy colloquy between Judge Limbaugh and Turner during the April 2, 2010, hearing allowed the District Court to more fully evaluate Turner's competency. The District Court also had the benefit of examining Turner's *pro se* filings. (Addendum, Exh. 1, 2, 3) Those motions demonstrated Turner's lack of knowledge as to the legal system, but did not show any evidence of a mental health issue. Turner cited the Constitution, Federal Rules of Criminal Procedure and cases to support his arguments. While his legal theories were suspect, his motions contained logical arguments that were designed to achieve a clear goal; either to have his case dismissed or the evidence thrown out. Rather than demonstrating mental incapacity, Turner's motions provide clear evidence that Turner was sufficiently competent to represent himself. All of those writings were available to the District Court for review in determining whether Turner suffered from a severe mental illness that

Appellate Case: 10-2524    Page: 35    Date Filed: 01/26/2011 Entry ID: 3749167

would preclude him from representing himself. The District Court examined each document and discussed them with Turner, as evidenced by the District Court's rulings on each motion on March 2, 2010.

This Court has previously considered the issue of whether a competency hearing is required in the absence of evidence of severe mental illness. The defendant in *Washington* appealed his conviction, contending that the district court improperly granted his request to represent himself. As part of that appeal, Washington claimed that the district court did not conduct an inquiry into his competency. *Washington*, 596 F.3d at 940. This Court held that the district court did not abuse its discretion by not ordering a competency evaluation or holding a competency hearing:

> First, none of the parties, including Washington or either of the attorneys that represented him prior to his request to proceed pro se, sought any sort of inquiry into Washington's competency. Second, the district court had the opportunity to observe Washington and interact with him at length. Finally, the district court specifically concluded that Washington was competent to waive his right to counsel. *Id*.

The *Washington* Court spoke more directly as to the district court's lack of any duty to hold a competency hearing:

> Therefore, a while a defendant must be competent in order to proceed pro se, *Edwards* does not require that a trial judge: (1) conduct an inquiry into the competency of every defendant who requests to proceed pro se, or (2) hold a hearing prior to making a competency determination. *Id*., at 941.

30

In Turner's case, neither Turner nor his attorney requested any kind of hearing or examination into Turner's mental health. Quite to the contrary, Turner's attorney assured the District Court that Turner was competent. As in *Washington*, the District Court had the opportunity on many occasions "to observe [Turner] and interact with him at length." *Id.*, at 940. The District Court had a substantial basis supporting its opinion that Turner was competent to proceed *pro se*. The District Court's finding that Turner was competent to make his decision to represent himself was supported by Turner's appearance of actual competence before the District Court and Mr. Skrien's assurance that Turner was competent to proceed *pro se*. Based on the lack of evidence in the record that a competency examination or hearing was necessary, pursuant to *Edwards* and *Washington*, the District Court was not required to hold a competency hearing.

**Evidence of Mental Capacity.**

Turner argues that the District Court should have concluded that he was not competent to represent himself. (Turner's brief, p. 15, 16) However, Turner has not presented evidence of any mental disease or defect that was present at the time that would have required the District Court to deny Turner's motion. Turner merely assumes that the brief reference in his Pretrial Services Report of having schizophrenia is sufficient to presume that he should not have been allowed to

Appellate Case: 10-2524    Page: 37    Date Filed: 01/26/2011 Entry ID: 3749167

represent himself. There is no evidence from the record that Turner suffered from any severe mental illness in April, 2010, that would have required the District Court to conclude that Turner was not capable of representing himself, or even required a competency hearing. Even now, Turner provides this Court with no proof, no examinations, no opinions, no evidence whatsoever that Turner suffered from a severe mental illness at the pertinent time.

The only evidence before the District Court was that Turner desired to represent himself; a choice that is permitted pursuant to the Sixth Amendment. In the event that Turner had presented a diagnosis of severe mental illness prior to his trial, then the District Court would have been required to make different findings, including a determination as to whether Turner's alleged mental illness was severe, preventing him from representing himself, or whether he was a "gray area" defendant who could validly choose to represent himself. The record and evidence before the District Court was that Turner was competent to proceed *pro se*, and devoid of any evidence to the contrary.

**Turner Made a Knowing and Informed Decision to Waive His Right to Counsel.**

Turner also claims that the District Court did not make a sufficient record to support the conclusion that Turner was making a "competent or understanding decision to exercise his informed choice to proceed to trial without an attorney."

32

(Turner's brief, p. 21) The Government notes that this allegation stands in opposition to an earlier statement in Turner's brief that "[t]he district court fulfilled its *duty to warn* Turner of the dangers of giving up his right to counsel . . ." (Turner's brief, p. 18)  However, the Government contends that the District Court adequately informed Turner of the dangers of self-representation so that his choice to waive counsel was a knowing and intelligent choice.

In making the assessment of a waiver's validity, this Court looks to the particular facts and circumstances in the case, including the background, experience, and conduct of the accused.  *United States v. Kiderlen*, 569 F.3d 358, 364 (8th Cir. 2009).  The key inquiry is whether the accused was made sufficiently aware of his right to have counsel and of the possible consequences of a decision to forgo the aid of counsel.  *Id*.  This Court upholds the district court's grant of a defendant's motion to represent himself if the record shows either that the court adequately warned him or that, under all the circumstances, he knew and understood the dangers and disadvantages of self-representation.  *Id*.  The court is not required to ensure that the defendant is capable of representing himself as well as a trained and experienced lawyer, only that he understands the risks involved in representing himself and that he has knowingly and intelligently chosen self representation.  *United States v. Ladoucer*, 573 F.3d 628, 633 (8th Cir. 2009).

Appellate Case: 10-2524     Page: 39     Date Filed: 01/26/2011 Entry ID: 3749167

Turner alleges that the District Court did not inform him of the statutory minimum and maximum sentences for his offense, that there was no discussion in detail of the procedures to be followed at trial, and that the District Court did not give him an explanation of the basic rules of cross-examination and the purpose for objections. (Turner's brief, p. 20, 21) Turner alleges that this lack of information led to a waiver of his right to counsel which was not knowing or voluntary, a contention which lacks merit. (Turner's brief, p. 22)

A similar complaint was made in *Kiderlen*. Kiderlen complained that his waiver of counsel was not knowing, intelligent or voluntary. Kiderlen argued that the district court did not engage in a colloquy with him to ensure that he knew what he was charged with. He also claimed that the district court did not inform him of possible defenses or lesser included offenses. The district court had directed the government's attorney to read the charges, but did not inquire as to whether Kiderlen actually understood those charges. *Kiderlen*, 569 F.3d at 365-66. This Court rejected Kiderlen's arguments, noting the defendant's education (high school graduate with one year of college), his fifteen convictions (showing experience with the criminal justice system) and his performance during the trial. *Id*., at 366.

Turner is a high school graduate with ten hours of college credit. (Trial Tr. p. 4 - 6; P.S.R. ¶¶ 75, 76) Turner knew what the charges were and the range of

34

punishment; he waived the reading of those charges and range of punishment during his arraignment on December 22, 2009. Turner had acquired nine convictions prior to his federal indictment, indicating his familiarity with the criminal justice system. Turner cross examined several of the Government's witnesses. He attempted to impeach Agent Becker and attempted, by his cross examination, to portray himself as someone cooperating with the Government as an informant. Turner also examined Becker as to his recollection of where the firearm was found, disputing Becker's knowledge of the facts of the case. (Trial Tr. pp. 97 - 111) Turner cross-examined Kennett Police Officer Craig Crow, in an attempt to elicit testimony that Turner was working as an informant for the Government. (Trial Tr. p. 144) Turner questioned Deputy Marcus Hopkins as to Turner's status as a jail trusty and that he did not attempt to escape during his sentence. (Trial Tr. p. 148) Turner examined the Government's DNA expert, and was able to have her repeat her testimony that at least two people left DNA evidence on the firearm mentioned in the Indictment. (Trial Tr. pp. 170 - 71)

The entire record is replete with evidence that Turner was aware of the nature of the charges and his range of punishment. Turner's substantial experience with the criminal justice system informed his choice of self-representation. The District Court advised Turner of the dangers of self-representation and conducted a sufficient

Appellate Case: 10-2524   Page: 41   Date Filed: 01/26/2011 Entry ID: 3749167

colloquy with him to determine that he was making a knowing, intelligent and voluntary choice to represent himself. While Turner's choice may not have been well advised, it was made knowingly, intelligently and voluntarily. The District Court can not be faulted for granting Turner his Constitutionally guaranteed right to represent himself.

## II. THE DISTRICT COURT WAS NOT REQUIRED, *SUA SPONTE*, TO ORDER TURNER TO UNDERGO A COMPETENCY EXAMINATION DURING OR AFTER THE TRIAL IN THE ABSENCE OF EVIDENCE THAT WOULD CAUSE THE DISTRICT COURT TO DOUBT TURNER'S COMPETENCE.

**Standard of Review.**

The district court's decision not to order a competency evaluation or hold a competency hearing is reviewed for abuse of discretion. *Washington*, 596 F.3d at 941 (Finding no abuse of discretion in district court's not ordering competency examination or hearing.)

**The Merits.**

Due process prevents the trial and conviction of a defendant who is mentally incompetent. *Vogt v. United States*, 88 F.3d 587, 590 (8th Cir. 1996), citing *Drope v. Missouri*, 420 U.S. 162, 172, 95 S.Ct. 896 (1975). This is the "substantive" competency principle. *Vogt*, 88 F.3d at 590, citing *Weisberg v. Minnesota*, 29 F.3d 1271, 1275-76 (8th Cir. 1994), *cert. denied*, 517 U.S. 1126, 115 S.Ct. 935 (1995).

Appellate Case: 10-2524    Page: 42    Date Filed: 01/26/2011 Entry ID: 3749167

Due process also requires that a hearing be held whenever evidence raises a sufficient doubt about the mental competency of an accused to stand trial. *Vogt*, 88 F.3d at 590, citing *Griffin v. Lockhart*, 935 F.2d 926, 929 (8th Cir. 1991) ("[This 'procedural' competency] principle operates as a safeguard to ensure that the ['substantive' competency] principle is not violated." *Id*. Claims involving these principles raise similar but distinct issues: the issue in a substantive competency claim is whether the defendant was in fact competent to stand trial, but the issue in a procedural competency claim is whether the trial court should have conducted a competency hearing. *Id*., at 590-91, citing *Sheley v. Singletary*, 955 F.2d 1434, 1438 (11th Cir. 1992); and *United States v. Day*, 949 F.2d 973, 982 (8th Cir. 1991). Even if there are no facts which invariably create a sufficient doubt about a defendant's competency, attention should be paid to any evidence of the defendant's irrational behavior, the defendant's demeanor before the trial court, available medical evaluations, and whether trial counsel questioned the defendant's competency before the court. *Vogt*, 88 F.3d at 591, citing *Day*, 949 F.2d at 982. Not every manifestation of mental illness demonstrates incompetence to stand trial. Similarly, neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial. *Id*., at 591, citing *Medina v. Singletary*, 59 F.3d 1095,

Appellate Case: 10-2524    Page: 43    Date Filed: 01/26/2011 Entry ID: 3749167

1107 (11th Cir. 1995). Treatment with anti-psychotic drugs does not per se render a defendant incompetent to stand trial. *Id*., at 591, citing *Sheley*, 955 F.2d at 1438.

Turner asserts a procedural competency claim, in that he alleges that circumstances arose during his trial and sentencing that should have caused the District Court to order a competency hearing. Absent some indication to the contrary, trial judges are entitled to presume that a defendant is competent. *Day*, 949 F.2d at 982. If sufficient doubt is raised as to the defendant's competency, the trial court must order a competency hearing. *Id*., at 981-82. To mount a successful due process challenge, the defendant must make a showing that the trial judge failed to see the need for a competency hearing when, based on the facts and circumstances known to the judge at the time, the judge should have seen such a need. *Id*.

Turner's issues in this point are concerned with his conduct after the start of his jury trial. Turner contends that his voir dire questions should have "alerted the district court to his deteriorating mental status." (Turner's brief, p. 23) He also claims that the P.S.R. contained enough information about Turner's mental health issues that it should have "alerted the district court that Turner's irrational statements during trial were not merely religious rhetoric or passionate spiritual beliefs, but were symptoms of his mental illness." (Turner's brief, p. 25, 26) Turner concludes that "a reasonable judge . . . would have doubted Turner's competence to proceed to trial and

38

to be sentenced." (Turner's brief, p. 26) A closer examination of the record discloses that Turner had logical themes to his voir dire questions and that those questions were not symptomatic of any mental illness. Furthermore, the P.S.R. did not contain any information that would lead the District Court to conclude that Turner suffered from a mental disease or defect that would prevent his prosecution that would have required the District Court to order a new trial and appoint counsel.

During his voir dire examination, Turner asked several questions of the jurors that had religious overtones. When he began his voir dire, Turner stated to the District Court:

> Turner: My question is more along just a moral basis. I don't have any particular questions as to the case, just moral.
>
> Court: That's fine. (Trial Tr. p. 36)

Turner then asked questions as to whether the jurors believed that Jesus forgives sins. He then asked several questions about whether any juror had made a mistake, whether a man can change his mind, and whether a man can change his mind after making a mistake. He asked several questions about whether the jurors believed several religious statements. Most of those questions drew objections, which were sustained. At one point, Turner asked if the jurors believed that God's forgiveness was complete. Some of the jurors raised their hands in response. Turner then asked

Appellate Case: 10-2524    Page: 45    Date Filed: 01/26/2011 Entry ID: 3749167

jurors who did not raise their hands in response to raise their hands and to keep them up. He then made a note of those jurors and struck each of them that were available for the jury. (Trial Tr. pp. 36 - 43).

Turner now contends that his voir dire questions exhibit his "hyper-religiosity" and should have alerted the District Court to his "deteriorating mental condition." (Turner's brief, p. 23) The Government contends that Turner's questions were nothing more than a logical plan to attempt to pick a jury that might be swayed to forgive him by acquitting him of the charges. He wanted jurors who believed in forgiveness, who believed in second chances and who believed that people make mistakes and then change. Turner was well aware of the evidence arrayed against him, including Turner's audio-taped confession and the fact that he led the officers to the handgun in the storage unit. Turner intelligently realized that he might not succeed if his strategy was to attack the sufficiency of the evidence. His voir dire strategy was to try to pick a sympathetic jury. Turner demonstrated his competency when he questioned the jurors as to whether God's forgiveness was complete. Turner asked all those jurors who disagreed with his statement to raise their hands. This action showed his ability to devise a strategy and the intelligence to implement it. Turner flushed out jurors which he perceived to be unfavorable and subsequently

40

struck them. In so doing, Turner performed just as any competent trial counsel would.

Turner's ability to pursue a legal strategy is best revealed when comparing his voir dire questions to the questions Turner asked on cross-examination. When Turner examined Government witnesses, he never asked any questions about religion, or beliefs, or forgiveness or mistakes. He focused solely on the evidence and the testimony of each witness. He focused on the witness's recollection of events, where evidentiary items were placed, and the witness's recollection of conversations with him. (Trial Tr. pp. 97 - 111, 115, 116, 144, 148) Turner even established, by his cross examination of the Government's DNA expert, that at least two people touched the firearm that he was charged with possessing. (Trial Tr. pp. 170, 171) Turner realized that there was no need to ask a witness to forgive him; the witness were not going to be judging the facts of this case. Consequently, Turner directed his questions to his witnesses to issues related to witness recollection and credibility. The different approaches to Turner's voir dire and his cross-examination demonstrate his competence. Contrary to the assertion in defendant's brief (Turner's brief, p. 23), there is no evidence of hyper-religiosity in Turner's cross-examination questions. Again, Turner was exhibiting goal-directed behavior that was both logical and orchestrated to achieve a specific result. Turner's voir dire questions did not

Appellate Case: 10-2524    Page: 47    Date Filed: 01/26/2011 Entry ID: 3749167

demonstrate any mental illness; they merely demonstrated a lay person's attempt to pick a sympathetic jury.

Turner also claims that the P.S.R. contained statements that should have alerted the District Court to a mental health issue. The mental health issues discussed in the P.S.R. were related to previous state convictions. The P.S.R. reflected that Turner was found competent to proceed to trial in 2006. The report also stated that Turner was not taking his prescribed medication for his condition, but did not include any information as to what effect that failure would have on Turner's present ability to represent himself. (P.S.R. ¶¶ 70 - 72) Turner concludes that the presence of this information in the P.S.R. should have led the District Court to conduct a competency hearing. Turner conflates the 2006 mental health examination (where he was found to be competent) into a claim of incompetence in April, 2010. Again, rather than proving his incompetence, the P.S.R. supports the District Court's decision that Turner was competent in April, 2010, in that the last time that Turner was examined, he was found to be competent.

There was no irrational behavior exhibited by Turner during his trial or during his sentencing. During that trial, he was polite, he did not argue with the District Court and he managed to address the jury at appropriate times and with appropriate comments. Based on the transcript, it appears that Turner's demeanor was proper and

42

did not cause any alarm to the District Court. There were no medical opinions before the District Court that indicated that Turner was incompetent. And finally, Turner's own counsel was of the opinion, three days before trial, that Turner was competent. Applying the *Day* factors of evidence of irrational behavior, demeanor before the District Court, available medical evaluations, and whether defense counsel questioned Turner's competency before the District Court, there is no basis to conclude that the District Court failed to see the need for a competency hearing. *Day*, 949 F.2d at 982. In *Washington*, this Court noted that no attorney had requested a competency hearing, that the district court interacted with Washington at length and that the district court specifically found Washington to be competent. These factors were sufficient to find that the district court did not abuse its discretion in not ordering a competency evaluation or holding a competency hearing. *Washington*, 596 F.3d at 941. Turner's due process rights were not violated and the District Court did not abuse its discretion in not ordering, sua sponte, a competency hearing.

In the event that Turner is alleging that he should not have been allowed to represent himself at sentencing, his alleged error is subject to a harmless error analysis. This Court approved of the use of harmless error analysis for a defendant who claimed that he did not effectively waive his right to counsel at sentencing *and* who receives a mandatory minimum sentence. *United States v. Crawford*, 487 F.3d

Appellate Case: 10-2524    Page: 49    Date Filed: 01/26/2011 Entry ID: 3749167

1101, 1108 (8th Cir. 2007).  In Turner's case, he received a mandatory minimum sentence of 180 months pursuant to 18 U.S.C. § 924(e) because he was convicted of being a felon in possession of a firearm and he had three prior violent felony convictions.  As an Armed Career Criminal, he could not have received a lesser sentence.  Therefore, Turner can not articulate any harm suffered due to his lack of counsel at sentencing because the District Court could not have imposed a more lenient sentence.  *Id*.  Turner received the least possible term of imprisonment that was permissible for his particular conviction.  No attorney could have obtained a lesser sentence once he was convicted.

The Government contends that the District Court did not abuse its discretion in continuing to consider Turner competent at the sentencing hearing, in the absence of any evidence that Turner was incompetent.  But even if the District Court did abuse that discretion, the error was harmless.

**III.     THE DISTRICT COURT DID NOT ERR IN DETERMINING THAT TURNER WAS COMPETENT, THEREBY ALLOWING TURNER TO CHOOSE TO REPRESENT HIMSELF IN THE ABSENCE OF ANY EVIDENCE THAT TURNER WAS INCOMPETENT.  THE DISTRICT COURT WAS NOT REQUIRED TO USE THE HIGHER COMPETENCY STANDARD APPLICABLE TO A DEFENDANT TO CHOOSE TO REPRESENT HIMSELF WHEN THE DEFENDANT SUFFERS FROM A SEVERE MENTAL ILLNESS .**

**Standard of Review.**

Appellate Case: 10-2524     Page: 50     Date Filed: 01/26/2011 Entry ID: 3749167

Determining whether a defendant is competent to stand trial is committed to the discretion of the district court. *United States v. Whittington*, 586 F.3d 613, 617 (8th Cir. 2009). This Court affirms the competency determination of the district court unless clearly arbitrary or unwarranted, or clearly erroneous. *Id*.

**The Merits.**

A defendant has the Constitutional right to proceed to trial without counsel when he voluntarily and intelligently elects to do so. *Edwards*, 554 U.S. at 170. However, this right of self-representation is not absolute. *Id*., at 171. The Constitution permits states to insist upon representation by counsel for those competent enough to stand trial but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves. *Id.*, at 178. The Constitution permits trial judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so. *Id*. The higher standard of mental capacity required by *Edwards* for a defendant to be able to elect to represent himself is not applicable unless the defendant suffers from a severe mental illness. *United States v. Berry*, 565 F.3d 385, 391 (7th Cir. 2009). Absent some indication to the contrary, trial judges are entitled to presume that a defendant is competent. *Day*, 949 F.2d at 982.

45

In this point, Turner claims that the District Court failed to use the correct standard when assessing his mental abilities to represent himself. A portion of Turner's argument rests on the comments made between the District Court and Turner's attorney:

Court: Do you have any question - - any reason to question the defendant's mental capacity to proceed?

Skrien: Your Honor, there is some history as to diagnoses of mental illness on Mr. Turner's part. However, it's my belief in having conversations with him that he understands. You know, when we talk about his case he asks relevant questions, has relevant concerns. Obviously, I would prefer that he retain me, I be allowed to continue to represent him. I think that is just generally in a defendant's best interest.

Court: So I take it you do not have any reason to question his competency.

Skrien: No, sir. (Hearing Tr., April 2, 2010, pp. 2, 3)

Turner contends that the District Court, by speaking in terms of general competency, used the wrong standard. The Government concedes that a higher standard that mere competence to stand trial is used when determining whether a

46

defendant may waive his right to counsel, but only when the defendant also has a severe mental illness. Then, the correct standard is to determine whether the defendant suffers from a severe mental illness to the point where they are not competent to conduct the trial proceedings by themselves. *Edwards*, 554 U.S. at 178. However, there is no basis to conclude that the District Court used the wrong standard when determining whether Turner was sufficiently competent to make the choice to represent himself here. The record indicates that Turner was competent in all areas and is devoid of any evidence to the contrary.

A similar issue was discussed in *Berry*, supra, where the defendant appealed the district court's decision to allow him to represent himself, claiming that the district court only determined that he was competent to stand trial as opposed to examining him to determine whether he suffered from a mental illness. *Berry*, 565 F.3d at 387 ("As Berry sees it, the court thought that so long as he was competent to stand trial it had no choice but to indulge his pleasure.") Berry asserted that the district court was required to conduct a further examination than to determine mere competency to stand trial. *Id.*, at 389. The Seventh Circuit rejected that argument, noting that Berry did not establish that he suffered from a severe mental illness:

> . . . But the upshot for Berry is clear: The Constitution *may* have allowed the trial judge to block his request to go it alone, but it certainly didn't require it. (citations omitted.)
> . . .

Appellate Case: 10-2524   Page: 53   Date Filed: 01/26/2011 Entry ID: 3749167

We emphasize the word "may" because *Edwards* does seem to cap a trial court's ability to foist counsel upon the unwilling. "Severe mental illness" appears to be a condition precedent. Certainly, the right to self-representation cannot be denied merely because a defendant lacks legal knowledge or otherwise makes for a poor advocate. (citations omitted.) . . . And the *Edwards* Court repeatedly cabined its holding with phrases like "mental derangement," 128 S.Ct. at 2386, "gray-area defendant," *id*. at 2385, "borderline-competent criminal defendant," *id*. at 2384, and, of course, "severe mental illness," *id*. at 2388. Edwards himself, after all, suffered from schizophrenia and delusions, not just a personality disorder. So even if we were to read *Edwards* to *require* counsel in certain cases – a dubious reading – the rule would only apply when the defendant is suffering from a "severe mental illness." Nothing in the opinion suggests that a court can deny a request for self-representation in the absence of this. Because there was no evidence before the trial court showing that Berry had such an affliction, *Edwards* was simply off the table.

*Berry*, 565 F.3d at 391.

The Seventh Circuit recognized that, in order to apply the more stringent analysis set forth in *Edwards*, the defendant would have to establish that he suffered from a severe mental illness, at a minimum. Otherwise, any competent defendant may always choose to represent himself.

There appear to be four basic levels of mental capacity discussed in cases similar to Turner's. The first group are the competent defendants, who may always exercise their Sixth Amendment right to represent themselves. *Edwards*, 554 U.S. at 170, *Berry*, 565 F.3d at 390. The second group would be those who have some

48

mental illness, but are competent enough to be able to choose to represent themselves. *Edwards*, 554 U.S. at 174-78. The third group would be those that are competent enough to stand trial, but they have a severe mental illness that prevents them from being able to choose to represent themselves. *Id*., 554 U.S. at 177-78. The second and third group are sometimes referred to collectively as the "gray area" defendants. *Edwards*, 554 U.S. at 173. The fourth group would be those who are incompetent and who may not be prosecuted for that reason. *Drope*, 420 U.S. at 171-72.

In order for Turner to prevail, he must show, as a condition precedent, that the evidence before the District Court demonstrated that he was in the third group; competent enough to stand trial but still suffering from a severe mental illness to the point where he was not competent to conduct trial proceedings by himself. Since there was no evidence before the District Court that Turner suffered from any mental illness at the time of the trial, the District Court was bound to allow Turner to exercise his Constitutional right to represent himself. *Berry*, 565 F.3d at 391. The higher standard required by the "gray area" defendants in *Edwards* was not applicable to Turner for the reason that there was no evidence that Turner suffered from a severe mental illness. The District Court did not use an incorrect standard. The District Court merely found Turner to be competent to stand trial with no mental illness. There was no reason for the District Court to conduct any further analysis of this

Appellate Case: 10-2524    Page: 55    Date Filed: 01/26/2011 Entry ID: 3749167

matter or for the District Court to consider whether Turner suffered from a severe mental illness that could affect his ability to choose to represent himself. The District Court had already concluded that Turner had no mental illness, obviating the need for such an enhanced analysis. Here, the District Court concluded that Turner fell into the first group of defendants as described above, those who may always make a valid choice to represent themselves.

Turner's brief states that "On the record before this Court, there is considerable evidence that Turner's mental illness interfered with his ability to represent himself at trial." (Turner's brief, p. 27) As far as the Government is aware, at the time that the District Court granted Turner's motion to represent himself, the only evidence that could be used support that conclusion was the oft-recounted statement of Turner's counsel at the April 2, 2010 hearing that Turner had some history of diagnoses of mental illness. That statement would not be enough to alert the District Court to a <u>current</u> mental health issue. Taken with the attorney's next statement - that Turner asked relevant questions, had relevant concerns and that his attorney had no reason to question Turner's competency - there is even more support for the conclusion that the District Court had absolutely no basis to determine that Turner suffered from a severe mental illness.

Appellate Case: 10-2524   Page: 56   Date Filed: 01/26/2011 Entry ID: 3749167

Turner states that "Defense counsel brought Turner's mental illness to the district court's attention. It was an abuse of discretion thereafter for the court to ignore this issue in its interactions with Turner, and to conclude that he was competent to represent himself." (Turner's brief, p. 30) Turner ignores counsel's next statements assuring the District Court that Turner asked relevant questions, had relevant concerns and was competent. Based on counsel's assurances, the District Court was justified in deciding, just like Turner's attorney decided, that Turner was fully competent in all areas. The decision of this District Court, who was "best able to make more find-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant" should be affirmed. *Edwards*, 554 U.S. at 177.

## CONCLUSION

The District Court properly determined that Turner was competent to decide whether to represent himself at trial. The District Court adequately warned Turner of the dangers of self-representation and Turner made a knowing, intelligent and voluntary choice to do so. The District Court was not presented with any evidence that would suggest that it should have ordered a competency examination for Turner; in fact, the evidence before the District Court was to the effect that Turner was fully

51

competent.  The District Court did not utilize an improper standard when evaluating

Turner's competency to decide to represent himself.

The Government respectfully requests that Turner's conviction and sentence

be affirmed.

RICHARD G. CALLAHAN
UNITED STATES ATTORNEY


/s/ *Keith D. Sorrell*
KEITH D. SORRELL, #23288MO
Assistant United States Attorney
555 Independence, 3rd Floor
Cape Girardeau, MO 63703
(573) 334-3736


## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies pursuant to Rule 32(a)(C)(7) that this Brief
is in 14.0 Times New Roman proportional type and contains 1,028 lines and 11,164
words, and pursuant to Eighth Circuit Rule 28A(c) that this Brief was prepared using
WordPerfect X4 software and is virus free.


/s/ *Keith D. Sorrell*
KEITH D. SORRELL

Appellate Case: 10-2524    Page: 58    Date Filed: 01/26/2011 Entry ID: 3749167

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 25, 2011, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Keith D. Sorrell*           
KEITH D. SORRELL